### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW MEXICO

JONATHAN GARCIA,

  Plaintiff,

v.               Civ. No. 21-157 GJF

KILOLO KIJAKAZI, *Acting Commissioner*
*of the Social Security Administration*,

  Defendant.

### <u>MEMORANDUM OPINION AND ORDER</u>

  THIS MATTER is before the Court on Plaintiff's "Motion for Reversal and Remand for Further Proceedings" [ECFs 21, 22] (collectively "Motion").   The Motion is fully briefed.   *See* ECFs 22 (Memorandum in Support), 26 ("Response"), 27 ("Reply").   Having meticulously reviewed the entire record, and for the reasons articulated below, the Court will **AFFIRM** the Commissioner's final decision, **DENY** the Motion, and **DISMISS** this case **WITH PREJUDICE**.

## I. BACKGROUND

  Plaintiff is a thirty-six-year-old man living with his wife and four teenage children.   *See, e.g.*, Administrative Record ("AR") at 78.   Plaintiff alleges that he cannot read, write, or perform simple arithmetic such as making change.   *Id.* at 899; *but see id.* at 285 (Plaintiff admitting that he can "read and understand English").   Plaintiff maintains that he never obtained a high school diploma or equivalent.   *Id.* at 899; *but see id.* at 384 (Plaintiff's promise to retrieve and produce his West Mesa High School diploma for a former employer).   His work history consists of twenty-four jobs over the last fifteen years.   *See id.* at 265–68, 421, 900.   Relevant work experience included construction labor and operating within a call center, assisting customers with warranties

and billing or customer service.   *See, e.g.*, AR at 381 (Plaintiff expressing "willing[ness] to learn" customer service work and describing past success in calming down irate callers).

In September 2015, Plaintiff applied to the Social Security Administration ("SSA" or "Commissioner") for disability insurance benefits.   *E.g.*, *id.* at 1013.   He claims disability due to a series of physical and mental conditions: impingement syndrome in his left shoulder, degenerative changes and impingement syndrome in his left hip (post-arthroscopy), intermittent explosive disorder, attention deficit hyperactivity disorder, mood disorder, and post-traumatic stress disorder.   *E.g.*, *id.* at 1132.   The SSA denied his claim initially, on reconsideration, and again after a hearing held by Administrative Law Judge ("ALJ") Lillian Richter on November 1, 2017.   *Id.* at 33, 1099.

In response, Plaintiff exhausted his administrative remedies and sought judicial review. AR at 882–83.   United States Magistrate Judge Steve Yarbrough affirmed the ALJ on the vast majority of arguments Plaintiff made, including two made here: whether the ALJ (1) properly weighed medical opinion evidence and (2) properly found that Plaintiff was not suffering from a "listed" impairment.   *Garcia v. Social Security Admin.*, No. 19-cv-395, slip op. at 21–24 (D.N.M. Aug. 7, 2020), https://nmd-ecf.sso.dcn/cgi-bin/DktRpt.pl?995108609940683-L_1_0-1 (remanding only on the narrow basis that the ALJ failed to harmonize discrepancies between expert testimony and the Dictionary of Occupational Titles ("DOT")).

On October 6, 2020, the SSA provided Plaintiff a second informal hearing, which resulted in another denial.   AR at 896, 937, 950, 1038.   In her decision, the ALJ found that Plaintiff's residual functional capacity ("RFC") did not preclude his ability to perform other jobs existing

nationwide in significant numbers.  *Id.* at 880–83.  As a result, the ALJ found Plaintiff not

disabled as defined by the Social Security Act.  *Id.* at 883.

Because the Appeals Council declined to assume jurisdiction of Plaintiff's case, the ALJ's

decision became the "final" agency action.  85 Fed. Reg. 73138-01 (Nov. 16, 2020) (to be codified

at 20 C.F.R. § 404.984)[1]; *accord* 5 U.S.C. § 704.  On February 23, 2021, Plaintiff appealed that

final action to this Court.  ECF 1.

## II.  PLAINTIFF'S CONTENTIONS

Plaintiff requests that the Court remand this case to the SSA for three reasons.  First, akin

to the argument rejected by Judge Yarbrough, he asserts that the ALJ failed to properly evaluate

medical opinion evidence in accordance with SSA regulations and Tenth Circuit precedent.  Mot.

at 8–17.  Second, again reminiscent of a claim Judge Yarbrough denied, Plaintiff argues that the

ALJ erroneously found that the mental Listing requirements did not apply to him and failed to

sufficiently explain her reasoning.  *Id.* at 17–20.  Finally, Plaintiff challenges the ALJ's RFC

finding, asserting that it is both unsupported and contradicted by the record because it fails to

consider all of Plaintiff's physical and mental limitations.  *Id.* at 20–27.  As a result, Plaintiff asks

the Court to outright reverse the SSA's denial of benefits or remand for a third round of

administrative proceedings.

## III.  STANDARD OF REVIEW

### A.  Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish his inability to "engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment

---

1  "[W]hen a case is remanded by a Federal [sic] court for further consideration and the Appeals Council remands the
case to an administrative law judge, . . . the decision of the administrative law judge . . . will become the final decision
of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case."

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To evaluate claims for benefits, the SSA has devised a five-step sequential evaluation process. *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920). In the first four steps, the claimant must show (1) that "he is not presently engaged in substantial gainful activity," (2) that "he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment or (4) that "the impairment or combination of impairments prevents him from performing his past work." *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan*, 399 F.3d at 1261; *Williams*, 844 F.2d at 755–51, 751 n.2.

If the evaluation survives step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5. However, the burden of proof shifts back to the claimant once he seeks judicial review. *Id.* at 146 ("An individual shall not be considered . . . disable[ed] unless he furnishes such medical and other evidence . . . as the [Commissioner] may require.").

### B. Substantial Evidence

Judicial review of the ALJ's five-step analysis (and ultimate decision) is both legal and factual. *See, e.g.*, *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (internal citations omitted) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence."). In determining whether the ALJ applied the correct legal standards, the Court examines "whether the ALJ

followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court may reverse or remand if the ALJ failed to "apply correct legal standards" or "show . . . [she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (internal citations omitted).

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.* (internal quotation marks and citation omitted). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "A finding of 'no substantial evidence will be found only whether there is a conspicuous absence of credible choices or no contrary medical evidence.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)) (internal quotations omitted).

Under this standard, a court should meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013); *Hamlin*, 365 F.3d at 1214. Indeed, a court is to "review only the sufficiency of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original). Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d

1195, 1200 (10th Cir. 2004)).   Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."   *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the ALJ applied the correct legal standards and supported her findings with substantial evidence, the Commissioner's decision stands.   *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

### C.  Medical Opinion Evidence

The ALJ must consider all medical opinions in the record.   *Mays v. Colvin*, 739 F.3d 569, 578 (10th Cir. 2014) (internal quotations omitted).   "[S]he must also discuss the weight [s]he assigns to such opinions, including the opinions of state agency medical consultants."   *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).   For claims filed before March 27, 2017, as the present claim was, medical opinions come from either: "acceptable medical sources" or "other sources."   "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."   20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1); *accord* Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *2.   Information from "other sources," medical or not, "show the severity of an individual's impairment(s) and how it affects the individual's ability to function."   *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007); *see* SSR 06-03p, 2006 WL 2329939, at *2.

> The ALJ must evaluate medical opinions according to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)); *accord* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Importantly, the Tenth Circuit does not require an ALJ to "apply expressly each of the six [*Watkins*] factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* These reasons are reviewed only for substantial evidence. *Doyal*, 331 F.3d at 764.

### D. "Treating Physician" Rule

When an opinion comes from a treating physician—an acceptable medical source who has treated a claimant and maintains an ongoing relationship with him—the ALJ applies a two-step construct. First, the ALJ analyzes whether the opinion deserves "controlling weight." *Watkins*, 350 F.3d at 1300. The opinion does so except where: (1) it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or (2) it is "[in]consistent with the other substantial evidence from the record." *Id.* (internal quotes omitted).

When one of those two conditions exists, and the opinion does not receive controlling weight, the ALJ proceeds to the second phase of analysis: deciding what, if any, weight to assign the opinion, and providing explanatory reasons that are tied to the *Watkins* factors. *Krauser*, 638 F.3d at 1330. The provided reasons must be "good reasons" and written "in [the] notice of determination or decision." 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96–2p, 1996 WL 374188,

at *5; *Doyal*, 331 F.3d at 762.   Further, the notice of determination or decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5.

## IV.  ALJ'S DECISION AND FINDINGS

Following "careful consideration of the entire record," the ALJ decided that Plaintiff was not "disab[led] within the meaning of the Social Security Act."   AR at 867; *accord* 20 CFR § 404.1520(a); 20 CFR § 416.920(a).

### A.  Steps One Through Three

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, August 17, 2015, through his date last insured, September 30, 2019. AR at 868–69.   At step two, the ALJ found that Plaintiff had the following severe impairments: "left shoulder impingement syndrome; femoracetabular impingement of the left hip; right hallux valgus (impairment associated with bunion on right foot); post-traumatic stress disorder (PTSD); intermittent explosive disorder; attention-deficit/hyperactivity disorder (ADHD); mood disorder; major depressive disorder; and anxiety disorder."   *Id.* at 869.

Plaintiff claimed before the ALJ that his conditions rendered him disabled enough to meet the mental listing requirements of §§ 12.04 ("Depressive, Bipolar, and Related Disorders"), 12.06 ("Anxiety and Obsessive-Compulsive Disorders"), 12.08 ("Personality and Impulse Control Disorders"), 12.11 ("Neurodevelopmental Disorders"), and 12.15 ("Trauma and Stressor-Related Disorders").   But the ALJ disagreed, finding instead that none of Plaintiff's physical or mental impairments satisfied the listings' required criteria, whether considered separately or in combination.   *Id*; *accord* 20 C.F.R. § 404, Subpart P, App'x 1.   In support, the ALJ cited multiple particular parts of Plaintiff's medical record that belied the purported severity of his symptoms.

*Id.* (citing June 2019 physical examination findings and referencing longitudinal medical records discussed later in the ALJ's written opinion); *id.* at 870–71 (finding only moderate limitations in the broad areas of functioning required by the "Paragraph B" criteria with sixteen specific citations to Plaintiff's medical record).

### B.  Step Four

"After careful consideration of the *entire* record," the ALJ found that Plaintiff had the following RFC:

> "[T]he claimant has the [RFC] to perform *light work* as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) . . . .  He can perform simple, routine, and repetitive work.   [Plaintiff] can have occasional interaction with supervisors and coworkers, but only incidental interaction with members of the public.   He can understand and communicate simple information.   He can make simple work[-]related decisions in a workplace with few changes in the routine work setting.   He can frequently reach, handle, and finger bilaterally."

*Id.* at 871 (emphasis added).  The ALJ anchored her RFC finding to her consideration of Plaintiff's self-described symptoms, the record's objective medical evidence, and those medical opinions that were consistent with the record.  *Id.* at 872 (acknowledging chronic left hip pain, ADHD, and PTSD).  But although these considerations led the ALJ to find that Plaintiff's impairments could have been reasonably expected to cause his alleged symptoms, she found meaningful contradictions between the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms and the record's medical evidence.  *Id.* at 871–72.  The ALJ spent eleven of her written decision's eighteen pages examining and discussing these inconsistencies.

#### 1.  The Objective Record

Regarding Plaintiff's physical condition, the ALJ cited where his records showed: (1) that his post-op hip recovery "[went] well" in 2015, (2) that he demonstrated improvement in physical therapy—at least, until he stopped attending—and (3) the disproportionality between his self-

reported pain symptoms and the largely unremarkable treatment findings.   *Id.* at 873.   The ALJ observed that medical records indicated Plaintiff displayed normal ambulation yet, after what appears to be a failed attempt to procure oxycodone,[2] was seen using crutches three months later. *Id.* at 873–74 (Plaintiff had "a normal gait without the use of any crutches for ambulation" and was "exercise[ing] regularly by doing push-ups, sit-ups, and 'football workouts'").   The ALJ cited records from 2016, 2017, and 2019, where physical examination notes reported that Plaintiff's hip was only "slightly tender"; he possessed normal gait; his hip hurt only when bearing weight; and, once taking oxycodone, he suffered "no acute distress" and demonstrated "4/5 strength" in his left hip's flexion.   *Id.*

The ALJ also considered Plaintiff's mental condition with an even lengthier review of the objective medical record but ultimately found "objective findings inconsistent with the more intense deficits in the claimant's testimony and at his psychiatric consultative examinations."   *Id.* In 2015, despite Plaintiff reporting symptoms of anger and irritability, behavioral health specialists found that he possessed "good judgment and insight."   *Id.*   In 2016, the ALJ noted that Plaintiff reported anger, inability to focus, anxiousness, hypervigilance, and ADHD, whereas the examining physician observed irritability, but also concentration, limited judgment, "fair to limited" insight, and "generally unremarkable objective mental status examination findings" from subsequent treatment notes six and seven months later.   *Id.* at 875.

The ALJ next reviewed the psychiatric consultative examination of Dr. Mary Loescher. Examination notes revealed "vague descriptions" of Plaintiff's reported flashbacks, "flat affect,"

---

[2] Reportedly, Plaintiff approached a Dr. Santiago Macias to request oxycodone by name; instead, the doctor offered Tylenol because "[Plaintiff's] current examination and medical history" made the opiate "not medically necessary or recommended").   *Id.*   But "[Plaintiff] responded by telling [the doctor] that he knew other doctors who would give him opiates, and that he was going to them instead . . . [then] walk[ing] out . . . with a normal gait, refusing any medical treatment."   *Id.*

and a marked contrast between his cognitive capacity during the clinical interview compared to his cognitive performance during an attempted formal intelligence test. *Id.* Similarly, the ALJ highlighted observations from one of Plaintiff's treating physicians, Dr. Marita Campos-Melady, whose longitudinal records showed Plaintiff managing his anxiety, irritability, and anger through relaxation techniques and breathing exercises. *Id.* at 876 (reporting Plaintiff's "cooperative attitude," "normal behavior," "fair to good response" to therapy), and Plaintiff denying having any anger issues back in 2019).

In a particularly troubling development, the ALJ cited Dr. Loescher's treatment notes suggesting that the severity of Plaintiff's symptoms might be deliberately exaggerated. *See id.* at 878 (observing "problematic" responses from Plaintiff that "may warrant an assessment for *malingering or symptom magnification*") (emphasis added); *see also id.* at 875 (noting Plaintiff appeared "well versed [sic] with legal terms and psychiatric diagnostic labels").

### 2. Medical Opinion Evidence

The ALJ considered nine separate medical opinions. For each, she stated the degree of deference she gave and explained why, focusing mostly on the nature and extent of the treatment relationship, the kind of examination performed, and the opinion's consistency vis-à-vis the record. The nine opinions came from state agency psychiatric consultants, state agency medical consultants, Drs. Paula Hughson, Ahmed El-Emawy, Laura Reardon, Mary Loescher, Donald Ortiz, Marita Campos-Melady, and PA-C Lynn Wanderer-Potter.

The ALJ gave the state agency psychiatric and medical consultants, both non-examining consultative opinions, "some" weight. *Id.* at 877. In explaining her assessment, the ALJ noted the opinions' consistency with the objective medical record—namely, therapy's mitigating effect on Plaintiff's psychiatric symptoms, his mostly unremarkable physical examinations, and his

relatively limited capacity to respond to workplace changes. *Id.* Despite this perceived consistency, the ALJ nevertheless deviated from the state consultants' opinion that Plaintiff could perform medium-exertional work, instead opting for light exertional levels. *Id.*

The ALJ assigned "significant" weight to the 2016 opinion of Dr. Paula Hughson, a psychiatric consultative examiner. *Id.* Again, the ALJ explained why: Dr. Hughson opined within her expertise, performed an objective test, reviewed Plaintiff's medical records, and reached conclusions harmonious with the objective medical record. *Id.*

The ALJ accorded "little" weight to Dr. Ahmed El-Emawy's 2016 physical consultative examination opinion, reasoning that his objective physical examination findings—normal ambulation and gait, only a marginal decrease in range-of-motion, and only slight tenderness to palpation—belied his conclusions regarding Plaintiff's capacity to sit, stand, and walk. *Id.*

Similarly, the ALJ gave "little" weight to the 2017 treating physician psychiatric opinion from Dr. Laura Reardon. The ALJ explained that "[Dr. Reardon's] conclusions make clear that [her] conclusions [about Plaintiff's workplace limitations] are based on [Plaintiff's] own reports[,] and she does not otherwise provide any objective basis to support [her] assessment." *Id.* at 878. Further, the ALJ identified friction among Dr. Reardon's opinion, her own treatment notes, and the objective record. Specifically, the ALJ highlighted Dr. Reardon's treatment notes, which themselves opined that Plaintiff "was doing well overall other than slight depression," while the objective record revealed that, unlike a patient socially debilitated by anger and PTSD, Plaintiff displayed "age[-]appropriate judgment." *Id.*

Dr. Mary Loescher's 2017 opinion as a psychiatric examiner received "little" weight too because, per the ALJ, her extreme conclusions conflict with her narrative observations— "observ[ing] [Plaintiff] to be friendly and very pleasant"—and later treatment records establishing

that Plaintiff's anger, anxiety, and communication skills improved with continued therapy.   *Id.*
Further, the ALJ expressed concern with Dr. Loescher's view of Plaintiff's symptom severity given
the doctor's concerns about Plaintiff's possible malingering.   *Id.*

As to the opinion of PA-C Wanderer-Potter, a consultative examiner who assessed Plaintiff
in 2019, the ALJ assigned only "little weight."[3]   *Id.*   Again, the ALJ provided a clear rationale:
Ms. Wanderer-Potter's opinion conflicted with objective records from 2015 showing that Plaintiff
ambulated normally, the PA's own objective findings that Plaintiff demonstrated a non-antalgic
gait and performed unremarkably when asked to walk on his heels, and Plaintiff's own admission
that he "often [takes] his children to the park."   *Id.*; *see id.* at 929 (Plaintiff claiming that he does
not drive at all).

The ALJ accorded "little" weight to the 2020 opinion of Dr. Donald Ortiz, Plaintiff's treating
physician, but explained why.   The ALJ found inconsistency between Dr. Ortiz's opinion and
Plaintiff's reported activity level, specifically citing Plaintiff's frequent trips to the park with his
children.   *Id.* at 879.   The ALJ also noted the doctor's treatment records belied his opinion
because they established that Plaintiff's alleged pain was "well controlled" by his regular use of
oxycodone and gabapentin.   *Id.*

Lastly, the ALJ examined the treating source psychiatric opinions—one each in 2019 and
2020—of Dr. Marita Campos-Melady.   The ALJ found that both opinions deserved only "little"
weight because they conflicted with the doctor's own treatment notes and the objective findings of
the mental status examination she conducted.   Specifically, the ALJ highlighted Dr. Campos-
Melady's observation that Plaintiff's anxiety and depression scored only "moderate[ly]" and his
condition improved with continued therapy.   *Id.*   And the ALJ found further support for this

---

[3] Notably, under relevant SSA regulations, PA-C Wanderer-Potter is not an acceptable medical source.   *See* 20 C.F.R. §§ 404.1502, 404.1513.

conclusion from Dr. Campos-Melady's status examination, the unremarkable findings of which offered her medical opinion no support.   *Id.*

Having completed her extensive review, the ALJ summarized her conclusion and provided additional reasons, sourced from the overall record, to explain her deviation from the medical opinions to the contrary.   *Id.* at 879–80.   Having justified her RFC, the ALJ went on to find that Plaintiff was unable to perform any of his past work.   *Id.* at 880–81.   Accordingly, she proceeded to step five to assess whether he was capable of performing any "other work."

### C.  Step Five

At step five, the ALJ developed the record by questioning the vocational expert ("VE").   The VE testified that a hypothetical individual with Plaintiff's RFC could perform the following representative occupations: Routing clerk (105,000 jobs in the national economy); Cleaner (220,000 jobs in the national economy); Shelving clerk (5,200 jobs in the national economy); Nut sorter (2,200 jobs in the national economy); Pneumatic tube operator (3,000 jobs in the national economy); and Press clipping cutter and paster (12,000 jobs in the national economy).   *Id.* at 882. Finding the VE's testimony consistent with the Dictionary of Occupational Titles, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. *Id.*   Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.   *Id.*

## V.  DISCUSSION

As explained above, Plaintiff first criticizes the ALJ's weighing of medical opinion evidence and asserts that the ALJ's erroneous weighing affected her analysis at each of steps three through five.   Mot. at 7–8.   In his Reply, Plaintiff objects to the ALJ's treatment of the medical opinions because, to him, the ALJ's rationale failed to provide "specific, legitimate reason[s]," and Plaintiff

views the Commissioner's evidence cited in the Response—including evidence the ALJ cited in her decision—as impermissible "post-hoc rationalization" by the SSA.   ECF 27 at 3–4 ("Reply"). Second, regarding the "Listing" evaluation at step three, Plaintiff alleges that he showed symptom severity capable of satisfying the Listings if only the ALJ had given more weight to the medical opinions of Drs. Reardon and Campos-Melady.   And third, as to the formulation of the RFC at step four, Plaintiff contends that the ALJ produced an erroneous RFC that contravenes SSR 96-8P, which requires RFCs to be supported by the record and to consider *all* of Plaintiff's conditions. *Id.* at 20–27 (emphasis added).   According to Plaintiff, the ALJ erred in her step-five analysis by tainting the hypotheticals she posed to the VE with an RFC cultivated from flawed assumptions. *See id.*

### A.  Substantial Evidence Supported ALJ's Weighing of Medical Opinion Evidence

As chronicled above, the ALJ extensively reviewed and analyzed the physical and psychiatric medical opinion evidence.   Nonetheless, Plaintiff attempts to identify two general flaws in the ALJ's decision: failure to "perform[ ] the requisite analysis" and failure to "provid[e] specific[,] legitimate reason[s for] reject[ing] *all* medical opinion [evidence]."   *Id.* at 8 (emphasis added); *but see* AR at 877 (crediting one physician's medical opinion evidence over others).   The Court will assess each argument in turn.

### 1.  Substantial Evidence Supported ALJ's Articulated Reasons for Rejecting Medical Opinion Evidence

An ALJ may accord medical opinion evidence less deference when she identifies facts in the record inconsistent with the physician's opinion.   20 C.F.R. § 404.1529(c)(4) (requiring the ALJ consider inconsistencies in the record); *cf.* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.").

Plaintiff argues that the ALJ failed to "provid[e] specific[,] legitimate reason[s]," "rejected all medical opinion[s]," and, supposedly, "superimposed her own [opinion]" instead.   Mot. at 8. But while Plaintiff correctly notes that an ALJ may not outright reject a medical opinion based only on her own lay opinion, Plaintiff failed to show how the ALJ's own lay opinion formed the sole basis for her rejection.   Indeed, the record reveals that the ALJ discarded only the medical opinions that she found inconsistent with the specific portions of the overall record *which she cited*.   *See, e.g.*, AR at 873–79.   In arguing to the contrary, Plaintiff either overlooks or ignores the specific facts cited in both the ALJ's opinion and Commissioner's Response.   This Court cannot credibly construe these findings as the ALJ's mere opinion when she explicitly collected them from external sources—the objective record or the opining physicians' own treatment notes.   *Id.*   Yet Plaintiff appears to disregard this fact, opting instead to dismiss it as improper "post-hoc rationalization." *Compare* Reply at 4 (framing the Response's arguments as "attempt[ing] to bolster the ALJ's opinion . . . by engaging in considerable post hoc rationale"), *with* Resp. at 10 (citing the ALJ's opinion itself where the ALJ cited particular pages of exhibits from the hearing and reiterating those same points, albeit with additional facts not expressly relied upon by the ALJ); *accord* AR at 877–79.

The Court considers Plaintiff's argument that the SSA has engaged in "post-hoc rationalization" to be well wide of the mark.   Generally, an agency cannot rely on post-hoc rationalization to defend its position from judicial scrutiny, but post-hoc rationalization only occurs when the agency puts forth entirely new reasons that were neither mentioned nor relied upon in the case's earlier administrative proceedings.   *E.g.*, *Michigan v. EPA*, 576 U.S. 743, 758 (2015) ("[A] court may uphold agency action only on the grounds that the agency invoked when it took the action."); *accord SEC v. Chenery Corp.*, 318 U.S. 80, 87–89 (1943) (declining to consider a

common-sense "equity" rationale—raised for the first time during judicial review—because the agency in the challenged administrative proceedings expressly relied only upon the standards by which a court of equity would hypothetically operate).

Plaintiff attempts to frame the Commissioner's Response as "post-hoc rationalization" with a few conclusory sentences and citation to two Tenth Circuit decisions.  *See* Reply at 3–4 (first citing *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004), then citing *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)).   But the Court can easily distinguish Plaintiff's proffered precedent. Unlike here, both *Robinson* and *Allen* involved cases where, on judicial review, the agency attempted to rely on positions not expressly taken by its own ALJs in their written decisions.[4]   Here, the ALJ's rationale focused on inconsistency, and the SSA, in its Response, points to evidence corroborating that rationale rather than advancing any new or conceptually distinct positions.

Binding precedent instructs the Court "not [to] reweigh the evidence or substitute [its] judgment for the Commissioner's."   *E.g.*, *Frantz*, 509 F.3d at 1300.   Accordingly, the Court limits its review to whether the ALJ's decision is at least supported by substantial evidence.   In light of the ALJ's specific citations to record evidence, the Court concludes that her findings properly rested on substantial evidence.   Plaintiff provides no reason to disturb the Commissioner's decision.

## 2.   ALJ's Analysis Properly Applied Relevant Legal Standards

Plaintiff's substantive challenge notwithstanding, he also challenges the ALJ's analytical procedure.   Namely, he argues that the ALJ's analysis improperly deviated from the "two[-]phase

---

[4] *Compare* Resp. at 15–25 (citing, *inter alia*, AR at 877, 878, 879) (providing reasons for each medical opinion accompanied by citations to the ALJ's opinion), *and Murray v. Berryhill*, Civ. No. 17-1086, 2018 WL 2159788, at *2 (May 10, 2018) (unpublished) (emphasis added) ("[I]t is appropriate for agency counsel to point out record evidence which supports th[e ALJ's] rationale and for courts to rely upon such evidence in the record *even if that particular evidence was not cited in the decision*"), *with Robinson*, 366 F.3d at 1084–85 (emphasis added) ("The ALJ's decision should have been evaluated based solely on *the reasons* stated in the decision"—not the evidence, but the rationale), *and Allen*, 357 F.3d at 1144 (abandoning the ALJ's rationale, the grids, in favor of VE testimony found to be impermissible post-hoc rationalization).

assessment" for weighing a treating physician's medical opinion as binding Tenth Circuit precedent requires. *See Mot.* at 13–16, 17–20; *Reply* at 3–5; *accord Krauser*, 638 F.3d at 1330.

An ALJ "evaluating the medical opinions of a claimant's treating physician . . . must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser*, 638 F.3d at 1330. First, the ALJ must articulate whether she gives the opinion controlling weight. This first step includes articulating whether the opinion is "well-supported" by medically acceptable clinical or laboratory modalities and whether the opinion is consistent with other record evidence; if yes to both, the opinion must be treated as dispositive. *See id.* If the ALJ does not consider the opinion dispositive, the second step requires that the ALJ expressly label the degree of deference, if any, she gave the opinion along with an explanation "tied" to the six *Watkins* factors. *See id.*

Notably, *Krauser* and its progeny do not require the ALJ to recite and analyze all six *Watkins* factors like magic words. Instead, the Tenth Circuit's chief concern in *Krauser* was the need to create an administrative record capable of judicial review—that is, a record reflecting that the ALJ made findings "sufficiently specific [for] any subsequent reviewers." *See id.* at 1331; *Oldham*, 509 F.3d at 1258. The decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Oldham*, 509 F.3d at 1258; *accord Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 417 (1971). And the failure to specify whether an opinion receives conclusive weight or not is typically considered, albeit in *dicta*, a harmless error. *E.g.*, *Guice v. Comm'r, SSA*, 785 F. App'x 565, 569–70 (10th Cir. 2019) ("[T]he ALJ did not assess whether the[ medical] opinions should be given controlling weight at step one . . . [which would have] be[en] harmless" had the ALJ not erred at step two).

Plaintiff argues that the ALJ failed to perform both parts of *Krauser* two-step analysis

because the ALJ "did not cite to evidence inconsistent" with the medical opinions and performed "no analysis of the [*Watkins*] factors." *E.g.*, Mot. at 14–16. But the Court does not share Plaintiff's selective reading of the administrative record. As painstakingly explained above, the ALJ did indeed identify record evidence inconsistent with certain physicians' medical opinions and, by continuously asserting the ALJ's failure to identify inconsistency, Plaintiff essentially argues that the ALJ's cited record evidence does not present an actual conflict with the medical opinion evidence. But the Court declines Plaintiff's invitation to "reweigh the evidence" or "substitute [its] judgment" concerning the degree of inconsistency with "that of the agency." *Newbold*, 718 F.3d at 1262. Although Plaintiff resists the ALJ's ultimate conclusion drawn from the record evidence, the mere "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (internal quotations and citations omitted). Mindful of its limited role, the Court is not permitted to "displace the agency's choice between two fairly conflicting views." *Id.* (internal quotations omitted).

The Court also concludes that Plaintiff has placed too much reliance on *Krauser* and its progeny without appreciating the substantial differences between those cases and this one. *Krauser* concerned an ALJ's decision that was practically devoid of any reviewable explanation. The ALJ decision in *Krauser* failed to identify what, if any, inconsistencies between the treating physician opinions and the record justified the denial of controlling weight. Moreover, the ALJ "failed to articulate the weight, if any," given to the opinions and ignored the *Watkins* factors altogether. *See id.* at 1300–31. *Krauser*'s progeny similarly followed a pattern of reversal or remand where the ALJ failed to produce "[e]xplicit findings[,] properly tied to each step of the prescribed

analysis[, to] facilitate meaningful judicial review."[5]

Here, by contrast, the ALJ specified particular pieces of record evidence that were inconsistent with the treating physicians' opinions, identified the degree of weight assigned in lieu of controlling weight, and provided a rationale considering factors "tied" to the *Watkins* factors. *Compare* AR at 873–79 (specifying the extent of each opinion provider's relationship to Plaintiff—consultative or treating, plus the year of issuance for ongoing relationships—and the degree to which the opinion found support from relevant evidence and the record as a whole), *with Krauser*, 638 F.3d at 1330 (listing *Watkins* factors that include "the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; the degree to which the physician's opinion is supported by relevant evidence; [and] consistency between the opinion and the record as a whole"). Indeed, the ALJ even penned a separate paragraph summarizing the inconsistencies and specifying additional inconsistent record evidence. AR at 879–80.

Plaintiff fails to explain how the ALJ identifying inconsistencies in two separate paragraphs—as both *Krauser*'s first step and the *Watkins* factors expressly call for—cannot be considered the "requisite analysis" required of the ALJ. The ALJ produced an administrative decision that facilitated meaningful judicial review. Furthermore because as explained above that decision properly applied legal standards, the Court will not disturb the Commissioner's decision.

## B.  ALJ's Listings and RFC Findings Are Supported by Substantial Evidence

Because Plaintiff has not shown that the ALJ gave the medical opinion evidence improper

---

[5] *Chrismon v. Colvin*, 531 Fed. App'x 893, 901 (10th Cir. 2013); *see Guice*, 785 Fed. App'x at 569–70 (ALJ provided "only conclusory reasons for rejecting" medical opinions, failed to "describe or discuss" the opinions, and failed to "point to anything in the record supporting her inconsistency findings[, n]or . . . explain[ing] by discussion elsewhere in the ALJ's decision"); *Chrismon*, 531 Fed. App'x at 895, 901 (ALJ's only stated reason for disregarding medical opinion was the absence of "supporting longitudinal records"); *Lopez v. Astrue*, 371 F. App'x 887, 891–92 (10th Cir. 2010) (ALJ's cited record evidence flatly failed to address bilateral knee condition and, for a separate medical opinion, completely "failed to identify" which record evidence was inconsistent with the medical opinion).

deference, his arguments concerning the Listings and RFC lack the necessary logical predicate—that the administrative record refutes or belies these two findings.   In other words, to prevail on either of these theories, Plaintiff would need to demonstrate that the ALJ erred in her consideration of the medical opinion evidence, which Plaintiff has not done.   Thus, the Court has no reason to revisit the Listings or RFC findings because the underlying facts have not changed, and the ALJ's assessment of those facts remains sound.[6]  *See Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009) (holding that courts should avoid remanding ALJ decisions on the ground that the ALJ inadequately explained his or her decision if doing so "'would lead to unwarranted remands needlessly prolonging administrative proceedings'" (quoting *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005))).

## VI.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's final decision is **AFFIRMED**, Plaintiff's Motion is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

_____

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***

---

[6]  The same can be said for Judge Yarbrough's analysis of the *nearly identical* arguments Plaintiff made in 2020.